UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO VINSON,                              Case No. 14-11130

           Plaintiff,                      Sean F. Cox
v.                                           United States District Judge

MICHIGAN DEPARTMENT OF              Michael Hluchaniuk
CORRECTIONS, STATE OF MICHIGAN, *et al.* United States Magistrate Judge

           Defendants.
_____/

**SECOND AMENDED[1] REPORT AND RECOMMENDATION**
**MOTIONS TO DISMISS (Dkt. 19, 22) AND MOTION TO STRIKE (Dkt. 37)**

**I.     PROCEDURAL HISTORY**

Plaintiff, on behalf of the decedent, filed this civil rights complaint on

March 17, 2014.  (Dkt. 1).  On April 28, 2014, this matter was referred for all

pretrial proceedings.  (Dkt. 7).  On July 25, 2014, defendants Warden Campbell,

MDOC,[2] Edwards, Faling, Hamblin, Hense, Hinsley, Hunter, Kinder, Murphy,

Royer-Thompson, Speer, and Wellman filed a motion to dismiss the complaint.

(Dkt. 19).  Plaintiff filed a response on September 2, 2014.  (Dkt. 24).  Defendants

filed a reply on September 16, 2014.  (Dkt. 25).  A second motion to dismiss was

---

[1] On March 9, 2015, Judge Cox issued an Order requesting clarification regarding which claims the undersigned recommended to be dismissed and which claims should survive.  (Dkt. 46).

[2] The MDOC was subsequently dismissed by stipulation and order.  (Dkt. 45).

filed by defendant Paratchek on August 27, 2014. (Dkt. 22). Plaintiff filed a response on October 24, 2014. (Dkt. 30). Paratchek filed a reply on November 7, 2014. (Dkt. 32). Plaintiff filed a motion to strike Paratchek's motion to dismiss as untimely. (Dkt. 37). Paratchek filed a response on December 22, 2014. (Dkt. 38). The parties filed a joint statement on December 30, 2014. (Dkt. 41). Plaintiff concedes that the claims against the MDOC should be dismissed based on Eleventh Amendment immunity. The Corizon defendants have withdrawn their concurrence motion. *Id*.; *see* Dkt. 33, 34, 40. These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss (Dkt. 19), which the undersigned construes as limited to plaintiff's deliberate indifference claims, be **GRANTED** in part (as to the deliberate indifference claims against defendants Faling, Royer-Thompson, Hinsley, Murphy, Edwards and Wellman) and **DENIED** in part (as to the deliberate indifference claims alleged against the remaining moving defendants in Dkt. 19), that defendant Paratchek's motion to dismiss (Dkt. 22) be **STRICKEN**, that plaintiff's motion to strike be **GRANTED**, and that plaintiff be permitted to **AMEND** the complaint to more fully describe his claims against defendants Faling, Roger-Thompson, Hinsley, Murphy, Edwards and Wellman. *See* Chart in § IV, *infra*, for additional details. If the Court adopts this Report and

2

Recommendation, the undersigned suggests that plaintiff be required to file his amended complaint within 21 days of entry of the order adopting.

## II.    FACTUAL BACKGROUND

This case concerns the medical care for prisoner Michael P. Vinson from about November 2011 until his death on May 25, 2012.  (Dkt. 1, ¶ 2).  Plaintiff alleged that between November 2011 and May 2012, defendants either denied him adequate health care or provided inadequate health care for his 37 reported incidences of abdominal pain, nausea, and weight loss.  (Dkt. 1, ¶ 171).  Vinson allegedly lost 35 pounds in that time period.  (Dkt. 1, ¶ 227).  After being transferred to Central Michigan Correctional Facility (STF) in St. Louis, Michigan on May 24, 2012, plaintiff died on May 25, 2012.  (Dkt. 1, ¶¶ 2, 233).  Plaintiff claims that Vinson's death stemmed from defendants' alleged collective deliberate indifference, civil conspiracy, and gross negligence.

## III.    PARTIES' ARGUMENTS

### A.    Defendants' Motion for Summary Judgment

Defendants argue that plaintiff's complaint does not reach past the "threadbare recitals" of the respective elements of the claims made, including deliberate indifference, gross negligence, and intentional infliction of emotional distress.  That is, plaintiff failed to identify how each defendant personally

violated Vinson's constitutional and statutory rights.[3]  Defendants criticize plaintiff's complaint for repeatedly using the "all-encompassing" terms "defendants" or "nurses."  Defendants point out that there are 23 individuals in the "defendants" category and 13 people in the "nurses" category.  According to defendants, plaintiff cannot transfer the putative liability from one actor's constitutional violations onto an entire group of people.  Rather, to survive a Rule 12(b)(6) motion, plaintiff must provide the Court with enough facts to draw the reasonable inference that each separate defendant is liable for the misconduct alleged.

There are defendants that plaintiff does not specifically mention beyond an introductory paragraph in the complaint: Faling, Royer-Thompson, Hinsley, Murphy, Wellman (who is a dietician, not a nurse), Edwards (who is a resident care aid, not a nurse).  Because subsequent allegations are made regarding all these defendants lumped together as "nurses," defendants contend that no specific personal involvement has sufficiently been alleged.  This also includes defendant Sharon Paratchek, who has filed a separate motion to dismiss.[4]

---

[3]  According to defendants, plaintiff has not done that.  Defendants' arguments regarding each defendant are detailed below.  Notably, while defendants generally argue that the complaint is deficient as to all claims, they only develop their arguments as to deliberate indifference. Defendants have neither specifically nor sufficiently moved for dismissal as to any other claims in their opening brief.

[4]  Paratchek also maintains that plaintiff's claims sound only in medical malpractice and plaintiff failed to follow Michigan law by obtaining an affidavit of merit before filing suit.  Since

4

As to a another group of defendants, while plaintiff's complaint's contains some more specific allegations regarding their involvement in plaintiff's care, defendants contend that, on their face, the allegations do not state a plausible claim for deliberate indifference and thus the claims fail.  These defendants are: Hense (¶ 75 of the complaint); Speer (¶ 113 of the complaint); and Hamblin (¶ 61).[5]

Defendants also argue that the claims against Campbell (Assistant Warden) and Hunter (Nurse Supervisor) should be dismissed because the two occurrences allegedly showing how these two individuals violated Vinson's constitutional rights does not demonstrate sufficient "factual content" for the court to draw a "reasonable inference" that they could be liable.  First, plaintiff claims Vinson's prison transfer itself, along with defendants' alleged failure to alert STF of Vinson's medical condition, evidences deliberate indifference and gross negligence.  However, defendants contend that a prison transfer is obviously not

---

plaintiff is not making a malpractice claim, this really does not address any relevant issue in this matter.

[5]   The paragraph regarding Nurse Hamblin refers to "particular medical treatment" by her and Dr. Jenkins.  Defendants complain that plaintiff fails to distinguish who provided what allegedly inadequate treatment and that since nurses cannot practice medicine under Michigan law, plaintiff is asking for defendant Hamblin to have violated Michigan law by "prescribing" the treatment that plaintiff claims Vinson needed.  This really misses the point.  Plaintiff's choice of the words "prescription" and "medical treatment" are not used or intended to mean the prohibited "practice of medicine" by a nurse.  Defendants do not offer any authority suggesting that nurses cannot be deliberately indifferent merely because they cannot "prescribe" treatment under Michigan law.  And, if lay persons can be deliberately indifferent, surely nurses can.

objectively unconstitutional; prison transfers are commonplace in a penal system. Also, plaintiff lists three individuals – defendants Campbell, Hunter, and non-MDOC Defendant Dr. Miles – responsible for the transfer, but fails to distinguish which defendant ultimately possessed the authority to authorize the transfer. *Id.* at ¶ 142. According to defendants, plaintiff asks this Court to speculate which defendant should be held liable.

The second instance supposedly reflecting Hunter's and Campbell's deliberate indifference occurred when Vinson's girlfriend placed defendants on "notice" of Vinson's medical condition. (Dkt. 1, ¶¶ 160, 183). Plaintiff alleges defendants failed to investigate Vinson's medical condition or seek adequate medical care in response. *Id.* While here plaintiff's claim is the lack of health care, at other times in the complaint plaintiff acknowledges Vinson did receive health care, albeit allegedly inadequate care. According to defendants, plaintiff does not establish that these two defendants controlled the quality or quantity of Vinson's health care. An assistant deputy warden and health unit manager are not health care givers. Thus, defendants maintain that this fact coupled with the circumstances of Vinson's transfer, raises only the "mere possibility" of these two defendants' misconduct, so dismissal is warranted. *See Iqbal*, 556 U.S. at 679.

According to defendants, plaintiff's claim against defendant Kinder should be dismissed for failure to state a claim under Rule 12(b)(6) because Kinder's

professional title itself (Clinical Administrative Assistant) and Vinson's death

merely provides the Court with "labels and conclusions." *Twombly*, 550 U.S. at

555-56. Plaintiff claims that Kinder's position as the employee who responds to

prisoner grievance appeals necessarily means that, in light of Vinson's death, she

was deliberately indifferent to his medical needs. According to defendants, this

logic amounts to a conclusion. With nothing more than defendant Kinder's job

description and Vinson's death, plaintiff provides "labels and conclusions"

concerning defendant Kinder's culpability. *Twombly*, 550 U.S. at 555-56.

> 2.    Plaintiff's response

In response, plaintiff points to the extensive factual allegations pertaining to

his conspiracy claim, including 37 instances in which Vinson sought medical care.

(Dkt. 24). According to plaintiff, the complaint identified specific MDOC or other

nurses, only on those occasions when that particular encounter was deemed

particularly egregious, outrageous and abhorrent in terms of the attendant nurse's

reaction to the complaint. Plaintiff contends that it in no way implies that a nurse

or other defendant named specifically in one encounter only saw the deceased on

that sole occasion. The complaint details the common scheme and plan whereby

the MDOC Nurses in concert with others "conspired to systematically ignore all

requests and pleas for medical treatment by Vinson for his serious medical

condition and instead agreed to a plan where the defendant nurses would routinely

write down Vinson's complaints of pain, vomiting, weight loss and nausea; perform a perfunctory physical examination and return him to the cell without real and/or adequate medical treatment for his serious medical condition." (Dkt. 1, Page ID 39, ¶ 196).  The complaint further detailed in specificity the alleged conspiracy; to withhold proper and adequate medical treatment and to instead humor Vinson by simply taking a written report each of the more than 37 times he complained of pain or other symptoms…."  (Dkt. 1, Page ID 39, ¶¶ 197-199; Page ID 7-24, ¶¶ 26-137).

Plaintiff also says, as to defendant Hunter, that the complaint alleges that the deceased's girlfriend "made numerous phone calls" to Hunter and "discussed in detail Michael Vinson's serious medical condition and requested that Defendant Joyce Hunter investigate" the complaints by the deceased and the lack of response by the medical staff.  (Dkt. 1, Page ID 27, ¶ 158).  According to plaintiff, the complaint details specifically and extensively the alleged facts that Hunter discussed the deceased's situation extensively with the deceased's girlfriend and that Hunter was placed on notice and was aware of the more than 37 documented instances where the deceased complained of abdominal pain, vomiting, weight loss, fever, chills, and "reports from prison guards of Michael Vinson in distress either in his bunk area or in one of the common areas…."  (Dkt. 1, Page ID 34-35, ¶¶ 183-187), (*see also* Dkt. 1, Page ID 7-24, ¶¶ 26-137).

Similarly, the complaint alleges that Kinder was made aware of the deceased's plight and lack of proper care because the deceased filed several appeals to Kinder "which were investigated and adjudicated" by Kinder. (Dkt. 1, Page ID 28, ¶ 162). According to plaintiff, the complaint details specifically and extensively the alleged facts that Kinder discussed the deceased situation extensively with the deceased and that Kinder was placed on notice and was aware of the more than 37 documented instances where the deceased complained of abdominal pain, vomiting, weight loss, fever, chills, and "reports from prison guards of Michael Vinson in distress either in his bunk area or in one of the common areas…." (Dkt. 1, Page ID 36-38, ¶¶ 188-192; Dkt. 1, Page ID 7-24, ¶¶ 26-137).

Plaintiff's complaint alleges that the deceased's girlfriend "made numerous phone calls" and "discussed in detail Michael Vinson's serious medical condition with Campbell and requested that Campbell investigate" the complaints by the deceased and the lack of response by the medical staff. (Dkt. 1, Page ID 27, ¶ 160). The complaint details specifically and extensively the alleged facts that Campbell discussed the situation extensively with the deceased's girlfriend and that Campbell was placed on notice and was aware of the more than 37 documented instances where the deceased complained of abdominal pain, vomiting, weight loss, fever, chills, and "reports from prison guards of Michael

Vinson in distress either in his bunk area or in one of the common areas…." (Dkt. 1, Page ID 32-34, ¶¶ 178-182; Page ID 7-24, ¶¶ 26-137).

Plaintiff also asserts that the complaint alleges that Campbell, Kinder and Hunter participated and endorsed the plan where the deceased was labeled as a "malinger and trouble maker" and the plan was to routinely record his documented complaints of pain, vomiting, weight loss and nausea, perform a perfunctory medical examination on occasion and return him to his cell without real and/or adequate medical treatment for his serious medical condition. According to plaintiff, these defendants' overt action was to ignore requests for help by failing to investigate and/or intercede, thereby allowing the plan to remain in effect until Michael Vinson died from the condition he complained of and had sought help for six terrifying months. (Dkt. 1, Page ID 40, ¶¶ 199-202; Page ID 7-24, ¶¶ 26-137).

According to plaintiff, the foregoing allegations state a claim for conspiracy under § 1983. In order to sustain a cause of action for civil conspiracy under 42 U.S.C. § 1983, a plaintiff must show that there was 1) a single plan, 2) that the alleged coconspirator shared in the general conspiratorial objective, and 3) that an overt act was committed in furtherance of the conspiracy to deprive plaintiff of his civil rights. *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). Neither an express agreement is required, nor knowledge of all the details of the plan or its participants. Plaintiffs must plead with some specificity supported by material

facts to state a claim. *Hickey v. Hollister*, 1994 U.S. LEXIS 4045 (6th Cir. 1994); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see also Horton v. Martin*, 137 Fed.Appx. 773 (6th Cir. 2005).  Plaintiff contends that the complaint provides specific material details about the plan by defendants, including the MDOC Nurses, to ignore Vinson's requests for adequate medical treatment and instead, to create a record of the request and to ignore the deceased and send him back to his bunk area.  Indeed, the complaint provides specific chronological details of approximately 37 visits to the medical area over a six month period and details the lack of response by the MDOC defendants and others.  The end result was the death of Vinson.  While defendants claim in their motion that either some nurses supposedly only had a single contact or that they as a group had no power to prescribe treatment, they cite no case law to support the proposition that a single overt act is insufficient to participate in a conspiracy or that the individual must have the power to remedy the harm when involved in a conspiracy under 42 U.S.C. § 1983.  Rather, according to plaintiff, there is no requirement that individuals participating in a conspiracy must engage in multiple acts to be liable under 42 U.S.C. § 1983.  The only requirement with respect to this cause of action is that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his civil rights.  *Hooks*, 771 F.2d at 943-944.  Here, according to the complaint, the MDOC nurses agreed to a single plan which was to ignore

11

Michael Vinson's complaints, to mollify him by taking a report and to send him back to his bunk area after taking the complaint, without any action to address his serious medical problem.  These MDOC nurses participated actively in this ghoulish plan for more than six months as Vinson slowly died before their eyes. Michael Vinson died from a ruptured blood vessel in the lower left abdomen; he had complained repeatedly about severe pain in that area for six months, requested that he be sent to an emergency room, requested that he be given an MRI, and the MDOC nurses were aware of the objective documented evidence of weight loss, nausea, fever, chills, vomiting, and the inability to walk.  (Dkt. 1, Page ID 7-24, ¶¶ 26-137).

Similarly, plaintiff points out that the complaint alleges that Campbell, Hunter and Kinder were aware of Vinson's serious medical condition and privy to the plan to ignore his complaints, simply make a record of them and to offer no proper medical treatment. The deceased filed several appeals/complaints with Kinder about his lack of proper and/or any medical treatment. Also, the deceased girlfriend had extensive discussions with Campbell and  Hunter about the deceased's serious medical condition and his inability to get proper care and/or treatment.  Thus, plaintiff contends that the complaint alleges with specificity the plan agreed to by all the defendants and the overt action by Kinder, Campbell and Hunter in agreeing to the plan and refusing to investigate or intervene despite

12

requests by the deceased to Kinder and to Campbell and Hunter by the deceased's girlfriend.

While defendants argue in their 12(b)(6) motion that Kinder, Campbell and Hunter did not violate the deceased's Eighth Amendment rights, plaintiff contends that they provide no specific facts to support that specious claim and they fail to cite to any case law that would support dismissal against these defendants at this preliminary stage. These defendants fail to point out to this court whether the objective and subjective components of an Eighth Amendment claim is lacking and case law in support of those necessary elements in order to secure a dismissal, but rather, without more, insist on dismissal because in their estimation, the complaint fails to state a cause of action. According to plaintiff, this is insufficient as a matter of law to secure a dismissal.

Under the subjective component a prison official cannot be found liable for deliberate indifference unless the official knows of and disregards an excessive risk to inmate health or safety. An official may not escape liability if the evidence shows that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976); *Scicluna v. Wells*, 345 F.3d 441, 447 (6th Cir. 2003). In other words, "prison officials may be held liable for failure to remedy a risk of harm so obvious and substantial that the prison officials

13

must have known about it." *Farmer v. Brennan*, 511 U.S. 825,858 (1994)

(holding "[u]nder the test we adopt today, an Eight Amendment claimant need not

show that a prison official acted or failed to act believing that harm actually would

befall an inmate; it is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm.").  Similarly, in the Sixth Circuit,

"lack of an actual knowledge of the harm on the part of a defendant is not a

defense if the facts are such that the defendant should have known his actions

would deprive plaintiff of his constitutional rights." *Weeks v. Chabowdy*, 984 F.2d

185, 187 (6th Cir. 1993), *see also Blackmore v. City of Kalamazoo*, 390 F.3d 890,

899-900 (6th Cir. 2004).

Plaintiff maintains that the complaint states with specificity that Campbell

and Hunter were informed by the deceased Michael Vinson's girlfriend about his

serious medical condition and the lack of medical care.  The discussions were

"extensive."  Yet, there is no evidence and the complaint so alleges, that these

defendants took any action despite being informed of Vinson's serious medical

condition and lack of care by prison employees.  Furthermore, Kinder was

personally approached by Vinson about his condition and lack of medical care and

also chose to take no action.  All three defendants were in supervisory/decision

making positions where intervention would have been appropriate and possibly

life saving.  Accordingly, plaintiff contends that the complaint details with

14

specificity Vinson's serious medical condition, his attempts to get help from Kinder and the extensive discussions his girlfriend had with Campbell and Hunter, all to no avail.  Thus, these defendants failed to act despite knowledge of a substantial risk of serious harm to Vinson and they should have known their inaction would deprive plaintiff of his constitutional rights.  *Weeks v. Chabowdy*, 984 F.2d 185, 187 (6th Cir. 1993), *see also Blackmore v. City of Kalamazoo*, 390 F.3d 890, 899-900 (6th Cir. 2004).  And, in fact their inaction did deprive Vinson of his constitutional rights and resulted in serious harm to him; death.

> 3.    Defendants' reply

In reply, defendants maintain that plaintiff's complaint does not sufficiently state a claim for conspiracy under § 1983 or § 1985.[6]  According to defendants, the conclusory allegations of seemingly random but chronologically reported interactions of defendants with a person who was a primary care physician (Dr. Mills), even if the allegations of breach of duty are taken as true, adequately describe a conspiracy to violate Vinson's constitutional rights.  Plaintiff alleges that a large number of health care staff interacted with Vinson or that Vinson's former girlfriend told non-medical staff about her or Vinson's concerns.  None of these allegations are, individually or in combination, the requisite material facts of sufficient specificity to describe a cognizable conspiracy.  Defendants maintain

---

[6] Notably, plaintiff did not make a claim for conspiracy under § 1985.

15

that there were no concerted group actions over the seven months at issue by many different staff in many different roles that indicate action in concert for the purpose of violating Vinson's Eighth Amendment rights.

Defendants also argue plaintiff's claim against Campbell fails because nowhere does the plaintiff assert that Campbell was a medical treater or that Campbell provided medical care or was competent to do so.  Nowhere does plaintiff allege that Campbell personally examined or otherwise involved himself in the medical care of Vinson.  As there are no allegations that Campbell was a physician, or other type of treater, and provided any medical care to Vinson, defendants maintain that plaintiff's complaint fails to demonstrate any direct personal involvement by Campbell in allegedly inadequate medical care of Vinson.  Defendants also argue that nowhere in the complaint does plaintiff assert that manager Hunter was in fact a treater of Vinson or that Vinson was presented to Hunter for treatment and Hunter was deliberately indifferent to the treatment request.  Hunter, a registered nurse, but working in an administrative capacity, managed the overall operation of the health services unit at the Cotton Correctional Facility (JCF) but is not alleged to have had any direct personal involvement in the delivery of medical care to Vinson.

In Count IV, plaintiff asserts that the Health Services secretary, described as Administrative Assistant Kinder, is a named defendant because she had received

16

several health care kites (appeals) from Vinson and passed those along to the health care providers who would and did decide the appropriate response to the medical concerns asserted. According to defendant, this claim fails because there is no assertion that secretary Kinder provided medical care to Vinson or that secretary Kinder had any responsibility to diagnose, prescribe or otherwise treat a prisoner's medical condition. According to defendants, the simple assertion that secretary Kinder received and processed kites from Vinson is hardly a demonstration that she had direct personal involvement in the alleged deliberately indifferent medical care that Vinson received through his more than 37 contacts with the various members of the health care staff at JCF.

D.     Analysis and Conclusions

1.     Motion to Dismiss - Dkt. 19

As stated above, defendants have not adequately moved for dismissal on any claims but the deliberate indifference claims. A civil conspiracy under §1983 is "an agreement between two or more persons to injure another by unlawful action." *Sizemore v. Forsthoefel*, 2013 WL 2950673, *3 (N.D. Ohio 2013), citing *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Id*., citing *Amadasu v.*

*The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). To state a claim for a conspiracy under § 1983, plaintiff must allege an agreement between two or more persons to act in concert to deprive a person of his Constitutional rights, and an overt act done in furtherance of that goal, causing damages. *See Fuller v. Shartle*, 2012 WL 1068805, at \*5 (N.D. Ohio 2012), citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Express agreement among all the conspirators is not necessary to find the existence of a conspiracy. *Id.* Conspiracy claims must be pled with a degree of specificity. *Id.*, citing *Hamilton v. City of Romulus*, 409 Fed. Appx. 826, 835-36 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2934 (2011). While vague and conclusory allegations unsupported by material facts are insufficient, circumstantial evidence of an agreement among all conspirators may provide adequate proof. *Id.* Notably, where all of the participants in the alleged conspiracy are members of the same collective entity, there are no two separate people to form a conspiracy and such a claim fails. *Amadasu*, 514 F.3d at 507.[7]

---

[7] The "'intracorporate conspiracy' doctrine" provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *see also Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991); *Coley v. Lucas Cnty., Ohio*, 2014 WL 273194 (N.D. Ohio 2014) (applying "intracorporate conspiracy" doctrine to § 1983 conspiracy claim); *Lundy v. City of Pontiac*, 2013 WL 5372873 (E.D. Mich. 2013) (applying "intracorporate conspiracy" doctrine to § 1983 conspiracy claim). No one has raised this issue; perhaps because the co-conspirators are employed by the Michigan Department of Corrections as well as Corizon.

In the view of the undersigned, plaintiff's conspiracy claim is not sufficient as to those defendants in the "nurses" category where specific overt acts are not alleged. This excludes defendants Hamblin, Hense, and Speer, against whom overt acts were alleged and the undersigned concludes that the complaint sufficiently states a claim as to them. While plaintiff put defendants on notice of the relevant time period, the names of the alleged conspirators, and the object and purpose of the alleged conspiracy, the "overt act" requirement as to the actual nurses in this category is not adequate. And, as to the non-nurses included in this category, more detail is also required regarding their "overt acts" and their duty to provide constitutionally adequate medical care. Thus, while the deliberate indifference claims against these defendants are deficient as they stand in the complaint now and should, therefore, be dismissed, in the view of the undersigned, plaintiff should be permitted to amend the complaint in this regard as to defendants Faling, Royer-Thompson, Hinsley, Murphy, Wellman, and Edwards.

As to the issue of personal involvement of various defendants, there is a group who did not provide medical care but who are alleged to be "on notice" that Vinson was being denied adequate medical care. As to Campbell and Hunter, because they never provided medical care to Vinson, defendants maintain that no claim for deliberate indifference can stand. However, defendants do not address other potential theories of liability for these defendants. A claim under § 1983

alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir. 2003), citing, *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992). However, such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities. *Martin*, 70 Fed.Appx. at 260, quoting *Hill*, 962 F.2d at 1213. "As opposed to holding the officials vicariously liable for the misconduct of others, plaintiffs may hold these officials liable for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights." *Id.* Indeed, "supervisors may be held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation." *Harman v. Bell*, 2008 WL 606998, *2 (E.D. Ark. 2008) (emphasis added), citing, *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007); *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006); *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004). Plaintiff's

20

complaint asserts such a theory and defendants have not addressed this issue at all. Thus, these defendants should not be dismissed.

Vinson died one day after he was transferred to another correctional facility. Plaintiff alleges that the decision to transfer Vinson – not using a medically equipped transfer vehicle – and the failure to inform the transferee facility of his medical condition was deliberate indifference and resulted in his death. Defendants complain that plaintiff failed to identify the "one" person responsible for his transfer and therefore, this cannot be used to support the deliberate indifference claim against Campbell, Hunter and Miles.  Plaintiff alleges that Campbell, Hunter, and Miles all had an obligation to make sure that the receiving facility was aware of his condition and all three failed to do so.  Defendant does not seem to dispute that duty and does not offer any authority in support of its claim that only one person was or can be responsible for the transfer.  Who made the ultimate decision is not dispositive of the claim that defendants had a duty to inform the receiving facility and failed to do so, which could clearly be deliberately indifferent, given plaintiff's medical condition at the time, of which they are all alleged to have been aware.  Thus, plaintiff has not failed to state a claim in this regard.

As to defendant Kinder, the administrative clinical assistant who reviewed grievances, defendants maintain that she merely processed kites and served in an

21

administrative capacity, not having provided any medical care, and therefore this allegation is insufficient to state a claim for deliberate indifference. Plaintiff's complaint alleges that Kinder is, in fact, a nurse, and that she processed appeals of the denial of requests for medical care. (Dkt. 1, Pg ID 28, 64). Her role seems akin to that of someone reviewing grievances. It is generally true that where a defendant's "only role[] ... involve[s] the denial of administrative grievances or the failure to act ... [he or she] cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). However, if a defendant is a medical professional reviewing a recommendation for care made by other medical professionals, the result may be different. *See e.g.*, *Titlow v. Correctional Med. Servs.*, 2008 WL 2697306, *12 (E.D. Mich. 2008) ("However, [the] *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals."). At the hearing, defendants' counsel maintained that Kinder is not a medical professional, however, there is no evidence in this record to contradict plaintiff's allegations that she is. Accepting plaintiff's allegations as true, Kinder would have a duty to ensure that Vinson received constitutionally adequate medical care. Thus, the claim against Kinder should not be dismissed.

As to defendants Hense, Speer, and Hamblin, defendants contend that even though specific treatment contact is identified in the complaint, these particular contacts in and of themselves do not constitute deliberate indifference on their

face.  In the context of the conspiracy claim made against all defendants, specific

participation in either denying Vinson medical care or providing constitutionally

inadequate care states a claim because the overt acts necessary to state a

conspiracy claim have been alleged.

    2.    Motion to Dismiss (Dkt. 22) and Motion to Strike (Dkt. 37)

    As to the motion to strike Paratchek's motion to dismiss, the Federal Rules

of Civil Procedure provide that "[a ]motion asserting any of these defenses [under

Rule 12(b)] must be made before pleading if a responsive pleading is allowed."

Fed. R. Civ. P. 12(b).  Defendant Paratchek filed her answer to plaintiff's

complaint on June 25, 2014, rendering this subsequent August 27, 2014 motion

under Rules 12(b)(6) untimely.  *See Williams v. State Farm Ins. Co.*, 781 F.

Supp.2d 519, 522 (E.D. Mich. 2011) (citing 5B Charles Alan Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ("[A] post-answer

Rule 12(b)(6) motion is untimely and . . . some other vehicle, such as a motion for

judgment on the pleadings . . . must be used.")).  Paratchek points out that the

Court could construe its motion as a Rule 12(c) motion for judgment on the

pleadings.  Conversion of a motion to dismiss into a motion for judgment on the

pleadings finds its roots in established Sixth Circuit precedent.  *See Satkowiak v.*

*Bay Cnty. Sheriff's Dep't*, 47 Fed. Appx. 376, 377 n.1 (6th Cir. 2002); *Scheid v.*

*Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436, n.1 (6th Cir. 1988)

(construing post-answer Rule 12(b)(6) motion as a Rule 12(c) motion); *Wagner v. Higgins*, 754 F.2d 186, 188 (6th Cir. 1985) (holding that "where the substance of the motion is plain," it is proper to treat a motion styled as one under Rule 12(b)(6) as if it were brought under Rule 12(c)); *see also* Fed. R. Civ. P. 12(h) (a Rule 12(b)(6) failure to state a claim defense and a Rule 12(b)(7) failure to join a party defense can be raised in a pleading, in a rule 12(c) motion, or even at trial).

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). However, even if the Court construes Paratchek's motion as a Rule 12(c) motion, the motion should be denied because the pleadings are not closed and thus a Rule 12(c) motion is not proper. Under Rule 12(c), a motion for judgment on the pleadings cannot be filed until the pleadings are "closed." Although it does not appear that the Sixth Circuit has directly addressed this issue, a number of district courts in this and other circuits addressing this issue have held that pleadings are not "closed" until every defendant has filed an answer. *See, e.g., Kowall v. GMAC Mortg.*, *LLC*, 2012 WL 884851, at *1 (E.D. Mich. Mar. 15, 2012) (pleadings do not close for purposes of a Rule 12(c) motion until defendants have filed an answer to the complaint); *Horen v. Board of Educ. of Toledo City Sch. Dist*, 594 F. Supp.2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be

24

filed."), citing *Habeeba's Dance of the Arts., Ltd. v. Knoblauch*, 2006 WL 968642, at *2 (S.D. Ohio 2006); *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Sons, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486, at *1 (S.D. Ohio 2009) ("Thus, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering."); *see also Nagy v. De Wese*, 705 F. Supp.2d 456, 460 & n.4 (E.D. Pa. 2010) (collecting cases).

In this case, a number of defendants have not filed answers to the complaint. Thus, not all defendants have answered the complaint and the pleadings in this matter are not "closed" for purposes of Rule 12(c). *See Nationwide Children's Hosp.*, 2009 WL 5247486, at *1 (pleadings not "closed" because although one defendant answered the counterclaim, the other two defendants filed a joint motion to dismiss); *Habeeba's Dance*, 2006 WL 968642, at *2 (Rule 12(c) motion premature when one defendant filed an answer but the other defendant filed a motion to dismiss in lieu of an answer).

The undersigned recognizes that courts maintain discretion in certain circumstances to consider a Rule 12(c) motion even when one of the defendants has not filed an answer. *See Nationwide Children's Hosp.*, 2009 WL 5247486, at *2, citing *Noel v. Hall*, 2005 WL 2007876, at *1-2 (D. Or. 2005). However, this is generally true in only limited circumstances, such as when a plaintiff fails to serve

25

one of the defendants.  *See id.*, citing *Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 894 (D. Cal. 1993) (holding that particular defendant had not been served and was not yet a party and the pleadings were therefore "closed" for the purposes of the 12(c) motion); *Noel*, 2005 WL 2007876, at *2 (considering motion for judgment on the pleadings where other two defendants had not answered the complaint for five years and the motion only sought to resolve a legal issue without dismissing any claims).  That is not the situation here, and the undersigned finds no reason to excuse the requirement that the pleadings be closed before a Rule 12(c) motion can be filed.  Based on the foregoing, the undersigned concludes that defendant Paratchek's motion to dismiss is untimely and should be stricken without prejudice.  The undersigned also recommends that plaintiff be required to amend the complaint to include specific allegations against Paratchek regarding any overt acts alleged to be committed by her in support of plaintiff's § 1983 conspiracy claim.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss (Dkt. 19), which the undersigned construes as limited only to plaintiff's deliberate indifference claims, be **GRANTED** in part (as to the deliberate indifference claims against defendants Faling, Royer-Thompson, Hinsley, Murphy, Wellman and Edwards) and **DENIED** in part (as to the

deliberate indifference claims alleged against the remaining moving defendants in Dkt. 19), that defendant Paratchek's motion to dismiss (Dkt. 22) be **STRICKEN**, that plaintiff's motion to strike be **GRANTED**, and that plaintiff be permitted to **AMEND** the complaint to more fully describe his claims against defendants Faling, Roger-Thompson, Hinsley, Murphy, Edwards and Wellman.  If the Court adopts this Report and Recommendation, the undersigned suggests that plaintiff be required to file his amended complaint within 21 days of entry of the order adopting.  The following chart more fully describes the undersigned's recommendations by Count in plaintiff's complaint:

| Count I - § 1983 Deliberate Indifference | Defendants Miles, Rhodes, Jenkins, Sudhir | Non-moving defendants. This Count remains pending. |
|---|---|---|
| Count II - § 1983 Deliberate Indifference | Defendant Campbell | Recommendation: motion to dismiss denied. |
| Count III - § 1983 Deliberate Indifference | Defendant Hunter | Recommendation: motion to dismiss denied. |
| Count IV - § 1983 Deliberate Indifference | Defendant Kinder | Recommendation: motion to dismiss denied. |
| Count V - § 1983 Conspiracy | Defendants Miles, Rhodes, Jenkins, Sudhir | Non-moving defendants. This Count remains pending. |

| Count VI - § 1983 Conspiracy | Defendant "Nurses" | Recommendation: motion to dismiss granted as to Faling, Royer-Thompson, Hinsley, Murphy, Wellman and Edwards; denied as to defendants Hamblin, Hense, and Speer; and complaint to possibly be amended. |
|---|---|---|
| Count VII - § 1983 Conspiracy | Defendants Campbell, Hunter, Kinder | Recommendation: motion to dismiss denied. |
| Count VIII - § 1983 | MDOC | Dismissed by stipulation and order. |
| Count IX - § 1983 | Defendant Corizon | Non-moving defendant. This Count remains pending. |
| Count X - Gross Negligence | All defendants | Recommendation: defendants did not move for dismissal on this Count. |
| Count XI - Intentional Infliction of Emotional Distress | Defendant physicians, nurses, Campbell, Hunter, and Kinder. | Recommendation: defendants did not move for dismissal on this Count. |

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

28

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 10, 2015                         s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

29

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
