UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO VINSON,                                    Case No. 14-11130

              Plaintiff,                         Sean F. Cox
v.                                                 United States District Judge

MICHIGAN DEPARTMENT OF                             Michael Hluchaniuk
CORRECTIONS, STATE OF MICHIGAN, *et al.* United States Magistrate Judge

              Defendants.
_____/

## AMENDED REPORT AND RECOMMENDATION[1]
## MOTIONS TO DISMISS (Dkt. 65, 66, 69)

## I.    PROCEDURAL HISTORY

Plaintiff, on behalf of the decedent, filed this civil rights complaint on

March 17, 2014.  (Dkt. 1).  On April 28, 2014, this matter was referred for all

pretrial proceedings.  (Dkt. 7).  On July 25, 2014, defendants Warden Campbell,

MDOC, Edwards, Faling, Hamblin, Hense, Hinsley, Hunter, Kinder, Murphy,

Royer-Thompson, Speed, and Wellman filed a motion to dismiss the complaint.

(Dkt. 19).  The Corizon defendants originally filed a concurrence with the motion

to dismiss, but later withdrew it.  The undersigned issued the Second Amended

Report and Recommendation on March 10, 2015, recommending that the motion

to dismiss be denied except as to certain defendants and recommending that

---

[1] Review of this matter was prompted by a telephone call from plaintiff's counsel.

plaintiff be permitted to amend the complaint as to those defendants.  (Dkt. 47, *see* chart on Pg ID 660-661).  Judge Cox adopted the report and recommendation in part and rejected it in part, and also decided that plaintiff was required to file a motion to amend the complaint as to those defendants where the complaint was deemed insufficient.  (Dkt. 50).  Plaintiff filed the motion for leave to the amend the complaint (Dkt. 51), which the undersigned granted.  (Dkt. 62).  In their opposition to the motion to amend, defendants argued that plaintiff's proposed amendments should not be permitted primarily because of futility.  The undersigned determined that defendants' futility arguments would best be resolved in the context of new motions to dismiss. (Dkt. 62).  The amended complaint can be found at Dkt. 63.

Defendants have now filed motions to dismiss the amended complaint. (Dkt. 65, 66, and 69).[2]  Responses (Dkt. 74, 77, 75) and replies (Dkt. 76, 80, 81) have also been filed.  The parties filed their joint statements on September 9, 2015. (Dkt. 83, 84).  Pursuant to notice, the Court held a hearing in this matter on September 23, 2015.  While some of the issues raised by defendants are essentially the same as previously addressed in the Second Amended Report and

---

[2] Defendant Paratchek's motion is found at Dkt 65.  Dkt. 66 is the motion to dismiss filed by defendants Corizon Corporation and its employees Jenkins, Lybarger, Miles, Neff, Rhodes, Sudhir, and Taymour.  The MDOC defendants, Campbell, Edwards, Faling, Hamblin, Hense, Hinsley, Hunter, Kinder, Murphy, Royer-Thompson, Speer, and Wellman filed their motion at Dkt. 69.

Recommendation and Judge Cox's subsequent Order, the undersigned has determined that all issues and arguments must be addressed anew, given that an entirely new complaint is now controlling.  (Dkt. 62, Bench Order dated 6/8/15) ("This court feels that while futility can be a proper objection to a motion for leave to amend, under the circumstances of this case, such issues are more properly raised in a motion to dismiss. The decision to grant this motion is without prejudice to any argument a defendant may make in the future that some or all of the claims in the complaint should be dismissed.")

This matter is now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions be **DENIED** in part and **GRANTED** in part.  Plaintiff's intentional infliction of emotional distress claim (Count X) should be **DISMISSED** without prejudice as to all defendants.  The undersigned also **RECOMMENDS** that plaintiff's official capacity claims against the MDOC defendants be **DISMISSED**.[3]  The undersigned also **RECOMMENDS** that all claims against defendant Sudhir be **DISMISSED**. In addition, plaintiff has agreed to dismiss the gross negligence claim against all

---

[3]  Plaintiff does not appear to dispute that the official capacity claims against the MDOC should be dismissed as this issue was not addressed in either plaintiff's response to the motion to dismiss or the joint statement of resolved and unresolved issues.  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) (Notably, the Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails to respond, "its opportunity is waived and its case wagered.").

Corizon employees and defendant Paratchek (Count IX).  The undersigned

**RECOMMENDS** that the motions to dismiss plaintiff's remaining claims (Counts

I, II, III, IV, V, VI, VII, VIII, and IX) by the remaining defendants be **DENIED**.

## II.    FACTUAL BACKGROUND

This case concerns the medical care for prisoner Michael P. Vinson from

about November 2011 until his death on May 25, 2012.  (Dkt. 63, ¶ 2).  Plaintiff

alleged that between November 2011 and May 2012, defendants either denied

Vinson adequate health care or provided inadequate health care for his 37 reported

incidences of abdominal pain, nausea, and weight loss.  (Dkt. 63).  Vinson

allegedly lost 35 pounds in that time period.  After being transferred to Central

Michigan Correctional Facility (STF) in St. Louis, Michigan on May 24, 2012,

Vinson died on May 25, 2012.  Plaintiff claims that Vinson's death stemmed from

defendants' alleged collective deliberate indifference, civil conspiracy, and gross

negligence.  (Dkt. 63).

## III.    ANALYSIS AND CONCLUSIONS

### A.    <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89

5

(2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs*., 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

B.   Individual § 1983 Deliberate Indifference Claims (Counts I, II, III, and IV).[4]

1.   MDOC defendants Campbell, Hunter, and Kinder (Counts II, III, and IV).[5]

The motion to dismiss the individual § 1983 claims against the MDOC defendants (Campbell, Hunter, and Kinder) was previously denied.  (Dkt. 48, Pg ID 660; Dkt. 50, Pg ID 700-701).  As mentioned above, rather than relying on the prior decision in this regard, the undersigned will address the merits of defendants' arguments.

As to Campbell and Hunter, they claim that plaintiff's claims are merely based on supervisory liability and must therefore be dismissed.  Plaintiff's amended complaint alleges that Vinson's girlfriend called prison officials on numerous occasions to inform the officials of Vinson's serious medical needs and to complain of the lack of treatment Vinson was receiving.  It is the alleged telephone calls from Vinson's girlfriend to Assistant Deputy Warden Campbell and Nurse Supervisor Hunter that form the basis for the deliberate indifference claims against Campbell and Hunter in Counts II and III.  Plaintiff alleges that Vinson's girlfriend's telephone conversations with Campbell and Hunter provided them with knowledge of Vinson's serious medical needs, and that neither of them

---

[4]  There is no separate individual § 1983 claim alleged against defendant Paratchek.

[5]  There are no separate individual § 1983 claims against any other MDOC defendants.

took steps to ensure that Vinson's serious medical needs were addressed.

According to defendants, these claims of deliberate indifference against Campbell and Hunter are appropriately dismissed because § 1983 liability may not be based on a respondeat superior basis. *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Defendants point out that in order to find supervisory personnel, such as Campbell and Hunter, personally liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), or at least acquiesced in the alleged unconstitutional activity of a subordinate. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Defendants maintain that, aside from what Campbell and Hunter purportedly "knew or should have known," plaintiff alleges nothing that would demonstrate Campbell and Hunter "either encouraged the specific incident[s] of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has noted, "supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior." *Salepour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). According to defendants, because plaintiff has alleged that Campbell and Hunter failed to act after allegedly being informed by Vinson's girlfriend of the unconstitutional

behavior of their subordinates, plaintiff has failed to state a claim upon which relief can be granted.

As the undersigned pointed out in the Second Amended Report and Recommendation, a claim under § 1983 alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir. 2003), citing, *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992). Such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities. *Martin*, 70 Fed. Appx. at 260, quoting *Hill*, 962 F.2d at 1213. "As opposed to holding the officials vicariously liable for the misconduct of others, plaintiffs may hold these officials liable for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights." *Id*. Indeed, "supervisors may be held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation."

*Harman v. Bell*, 2008 WL 606998, *2 (E.D. Ark. 2008) (emphasis added), citing,

*Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007); *Johnson v. Blaukat*, 453

F.3d 1108 (8th Cir. 2006); *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040

(8th Cir. 2004).  In the view of the undersigned, as previously determined,

plaintiff's complaint asserts such a theory and defendants Campbell and Hunter

have not addressed this issue at all, again.  Thus, these claims (Counts II and III)

against Campbell and Hunter should not be dismissed.

　　　According to defendant Kinder, plaintiff's primary allegation against her is

that she failed to take action after reviewing and responding to one of Vinson's

grievance appeals.  Kinder is an Administrative Nurse who works in the MDOC

Southern Regional Healthcare Administration Office and responds to prisoners'

medical grievances.  Kinder maintains that the failure to act on a grievance is

insufficient to establish liability under §1983.  *See Shehee*, 199 F.3d at 300.  To

the extent that plaintiff argues that Kinder is liable for the alleged unconstitutional

acts of other officers, "§ 1983 liability must be based on more than respondeat

superior, or the right to control employees."  *Id*.  Accordingly, Kinder contends

that Count IV (deliberate indifference) should be summarily dismissed.

　　　It is generally true that where a defendant's "only role[] ... involve[s] the

denial of administrative grievances or the failure to act ... [he or she] cannot be

liable under § 1983."  *Shehee*, 199 F.3d at 300.  However, if a defendant is a

medical professional reviewing a recommendation for care made by other medical professionals, the result may be different. *See e.g.*, *Titlow v. Correctional Med. Servs.*, 2008 WL 2697306, *12 (E.D. Mich. 2008) ("However, [the] *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals.").  While Kinder's counsel previously maintained that she was not a medical professional, it is clear that, in fact, Kinder is a nurse. Accepting plaintiff's allegations as true, Kinder would have a duty to ensure that Vinson received constitutionally adequate medical care.  Thus, as previously determined, the claim (Count IV) against Kinder should not be dismissed at this time.

### 2.   Corizon Defendants (Count I)

According to the individual Corizon defendants, plaintiff's § 1983 claim against them (Count I of the amended complaint) failed to set forth factual allegations to support such a claim against defendants Miles, Rhodes, Jenkins, and Sudhir.  Defendants maintain that while plaintiff makes factual allegations concerning Dr. Miles and Dr. Jenkins in the amended complaint, referencing medical care and medical decision making, the allegations do not demonstrate deliberate indifference to the decedent.  As to defendant Dr. Sudhir, plaintiff only states in ¶ 5: "That The Physicians; Richard Miles, Karen Rhodes, Eddie Jenkins, and Bhamini Sudhir were employees of Corizon providing medical services as

11

third party government contractors and at all times acted under color of state law for purposes of § 1983." (Dkt. 63). No other specific factual references exist in the amended complaint as to Dr. Sudhir's actions concerning Vinson, and Dr. Sudhir is only mentioned in the titles to Counts I and V.

As to defendant Dr. Rhodes, plaintiff makes several factual statements, but defendants say that they do not individually or together state a claim of deliberate indifference. According to defendants, the statements in the amended complaint indicate that Dr. Rhodes saw Vinson multiple times for back pain, prescribed medication, supervised a nurse (who is an MDOC employee, not a Corizon employee, and therefore, not supervised by Dr. Rhodes or other Corizon staff), noted his condition was poor and he had weight loss, and allegedly conspired against him. However, defendants contend that none of this states a claim for deliberate indifference. Defendants argue that plaintiff admits that Vinson was given medical treatment, just not the medical treatment he wished. Thus, there is no indication plaintiff can demonstrate deliberate indifference to any of Vinson's serious medical needs. Defendants maintain that plaintiff makes no specific factual allegations as to defendant Sudhir, and the few references to Dr. Rhodes do not demonstrate a reckless indifference to Vinson's medical needs. Defendants cite *Daniel v. Young*, 50 Fed. Appx. 221, 222 (6th Cir. Tenn. 2002) and *Reid v. Sapp*, 84 Fed. Appx. 550, 552 (6th Cir. Ky. 2003) in support of their arguments.

12

Defendants further argue that plaintiff makes many factual allegations regarding some defendants, but none as to defendant Sudhir, and only vague ones as to defendant Rhodes.  According to defendants, Vinson was provided some medical care by these defendants, simply not the medical care plaintiff desired. Defendants maintain that such differences of opinion do not establish a Constitutional violation and that mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Defendants contend that plaintiff has not demonstrated that these defendants were deliberately indifferent to any serious medical need he may have had.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *See Westlake*, 537 F.2d at 860 n. 5.

In response, plaintiff contends that defendants argue in their 12(b)(6) motion that Corizon physicians, specifically tasked with providing medical care did not violate the deceased's Eighth Amendment rights, but provide no specific facts to support that specious claim.  Nor do defendants cite to any case law that would support dismissal against these defendants.  According to plaintiff, defendants fail to point out to this court whether the objective and subjective

13

components of an Eighth Amendment claim is lacking and cite no case law that refutes those necessary elements in order to secure a dismissal. Rather, without more, the Corizon defendants insist on dismissal because in their estimation, the amended complaint fails to state a cause of action, which plaintiff contends is insufficient as a matter of law.

Plaintiff maintains that the amended complaint states with specificity that the Corizon physicians had numerous contacts with Vinson during which he complained of persistent and worsening nausea, vomiting, weight loss and a severe abdominal pain, specifically on the left side of the abdomen. The Corizon physicians documented the persistent and worsening symptoms, many of them objective in nature such as weight loss and vomiting, which went on for six months. The Corizon physicians were also informed, by the medical professionals and nurses that they supervised, of Vinson's persistent and worsening symptoms of nausea, weight loss, vomiting and severe abdominal pain. Plaintiff also points out that the Corizon physicians were fully aware that Vinson had been rushed to the emergency room of the Duane Walter Hospital in December 2011, where he was treated and discharged back to their care with the specific medical instructions that Vinson should be brought back to the Duane Walter Hospital if the "symptoms persisted or got worse." The symptoms persisted and worsened for five additional months after that emergency room visit and plaintiff contends that

14

the Corizon physicians deliberately refused to send Vinson to a hospital for proper

and necessary medical treatment.  Thus, according to plaintiff, Vinson died as a

result of these Corizon physicians' deliberate indifference to his need for adequate

and proper medical care.  Plaintiff maintains that they had knowledge of his

medical condition and were fully aware of the medical risk but were reckless in

their care of the now deceased Vinson.  And, according to plaintiff, these

defendants failed to act despite knowledge of a substantial risk of serious harm to

Vinson.  Finally, plaintiff contends that these defendants should have known that

their inaction would deprive plaintiff of his constitutional rights.  *Weeks v.

Chabowdy*, 984 F.2d 185, 187 (6th Cir. 1993), *see also Blackmore v. City of

Kalamazoo*, 390 F.3d 890, 899-900 (6th Cir. 2004).  According to plaintiff, their

inaction deprived Vinson of his constitutional rights and resulted in serious harm

to him; death.

The undersigned agrees with defendant Sudhir's contention that the

amended complaint fails to state a claim for deliberate indifference against him.

Sudhir cannot be held liable under § 1983 unless plaintiff has alleged that he is

culpable because he was personally involved in the allegedly inadequate medical

care provided to the plaintiff or that he otherwise encouraged or condoned others

in providing such inadequate medical care.  *See Bellamy v. Bradley*, 729 F.2d 416,

421 (6th Cir. 1984).  As Sudhir points out, there is only one allegation in the

15

amended complaint against him: "That The Physicians; Richard Miles, Karen Rhodes, Eddie Jenkins, and Bhamini Sudhir were employees of Corizon providing medical services as third party government contractors and at all times acted under color of state law for purposes of § 1983." (Dkt. 63, ¶ 5). Accordingly, the undersigned concludes that the amended complaint fails to state a claim for deliberate indifference (or any other claim given the lack of any substantive allegations whatsoever) against Sudhir and his motion should be granted in its entirety.

The undersigned disagrees, however, that plaintiff fails to state a claim for deliberate indifference against defendants Jenkins, Miles, and Rhodes. First, the two cases these defendants rely on, *Daniel v. Young*, 50 Fed. Appx. 221, 222 (6th Cir. Tenn. 2002) and *Reid v. Sapp*, 84 Fed. Appx. 550, 552 (6th Cir. Ky. 2003), involve either a summary judgment motion or a 28 U.S.C. § 1915 dismissal, not a Rule 12(b)(6) motion. In both cases, medical records were examined to support the decisions reached, rather than merely looking at the four corners of the complaint. It is not appropriate to apply summary judgment standards to this motion to dismiss and therefore, these cases are easily distinguished.

Next, in contrast to Sudhir, the amended complaint is replete with specific allegations of constitutionally deficient care as to defendants Jenkins (¶¶ 29, 30, 31, 33, 48, 49, 51, 58, 59, 60, 61, and 68), Miles (¶¶ 23, 38, 39, 40, 43, 44, 51, 56,

16

57, 79, 83, 84, 85, 86, 88, 100, 110, 111, 112, 118, and 142) and Rhodes (¶¶ 23,

44, 75, 77, 78, and 90).  Moreover, the allegations made against these particular

Corizon physicians are not limited to allegations in the amended complaint where

their names are specifically mentioned.  Indeed, throughout the amended

complaint, plaintiff alleges that these physicians, among other medical providers,

were aware of Vinson's complaints and progressively worsening condition and

failed to take any action.  In conjunction with the specific acts where the allegedly

inadequate care was provided, plaintiff sufficiently states that the physicians

participated in decision-making leading to the alleged unconstitutional treatment

of Vinson and his transfer to another facility, where he ultimately died.  It is

generally true that where a defendant's "only role[] ... involve[s] the denial of

administrative grievances *or the failure to act* ... [he or she] cannot be liable under

§ 1983."  *Shehee*, 199 F.3d at 300 (emphasis added).  However, if a defendant is a

medical professional reviewing a recommendation for care made by other medical

professionals, the result may be different.  *See e.g.*, *Titlow*, 2008 WL 2697306,

*12 ("However, [the] *Shehee* defendants were not medical professionals reviewing

the recommendations of other medical professionals.").  Here, the allegations in

the amended complaint as to defendants Jenkins, Miles, and Rhodes go far beyond

a mere failure to act.

  As noted by plaintiff, a claim of deliberate indifference under the Eighth

Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). This prong does not appear to be disputed by any defendant. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 Fed.Appx. 125, 126 (6th Cir. 2003), citing *Farmer v. Brennan*, 511 U.S. at 837-47. Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir. 2002), quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id*. at 844, quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Here, plaintiff's amended complaint alleges that defendants Jenkins, Miles, and Rhodes provided grossly inadequate care

18

sufficient to state a claim for deliberate indifference.

Moreover, while an allegation of mere negligence in diagnosis or treatment is not actionable under § 1983, a delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam), cert. denied, 496 U.S. 928 (1990). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976). In this case, defendants Jenkins, Miles, and Rhodes are alleged to have directly provided constitutionally deficient care, been aware of allegedly constitutionally deficient care, and have participated in decisions regarding allegedly constitutionally deficient care. These defendants simply do not address all of these allegations in the context of Count I. In the view of the undersigned, plaintiff has not merely alleged that these defendants "negligently" failed to diagnose Vinson's condition or treat his symptoms. Rather, plaintiff claims that they so inappropriately treated Vinson's condition that he unnecessarily suffered for six months, that they delayed critical treatment, and that they ultimately caused his death. In the view of the undersigned, the allegations in plaintiff's complaint against the Corizon

19

defendants fall within the scope of *Westlake v. Lucas*.

C.    § 1983 Civil Conspiracy - Counts V, VI, and VII[6]

A civil conspiracy under §1983 is "an agreement between two or more persons to injure another by unlawful action." *Sizemore v. Forsthoefel*, 2013 WL 2950673, *3 (N.D. Ohio 2013), citing *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Id.*, citing *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). To state a claim for a conspiracy under § 1983, plaintiff must allege an agreement between two or more persons to act in concert to deprive a person of his Constitutional rights, and an overt act done in furtherance of that goal, causing damages. *See Fuller v. Shartle*, 2012 WL 1068805, at *5 (N.D. Ohio 2012), citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Express agreement among all the conspirators is not necessary to find the existence of a conspiracy. *Id.* Conspiracy claims must be pled with a degree of specificity. *Id.*, citing *Hamilton v. City of*

---

[6] Count V is the § 1983 Conspiracy claim against the Corizon defendants (Miles, Rhodes, Jenkins, and Sudhir). Count VI is the § 1983 Conspiracy claim against the "other medical professionals" (Hamblin, Faling, Taymour, Royer-Thompson, Speer, Hense, Lybarger, Wellman, Hinsley, Neff, Murphy and Paratchek). Count VII is the § 1983 Conspiracy claim against Warden Campbell, Nurse Supervisor Joyce Hunter, and Lauren Kinder. (*See* Dkt. 63).

20

*Romulus*, 409 Fed. Appx. 826, 835-36 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2934 (2011).  While vague and conclusory allegations unsupported by material facts are insufficient, circumstantial evidence of an agreement among all conspirators may provide adequate proof.  *Id.*

> 1.   Overt Acts

The individual Corizon defendants assert that plaintiff's amended complaint does not demonstrate the existence of a "plan."  According to these defendants, there is nothing to suggest there was an agreement between two or more defendants to injure Vinson by unlawful action.  They contend that there is nothing to show an expressed or implied agreement among the Corizon defendants to show evidence of a conspiracy.  There is nothing to show a single plan existed or that these defendants shared in a general conspiratorial objective, or any overt act, involving Vinson's medical care.  According to the Corizon defendants, plaintiff essentially just alleges breaches of duties by "recklessly, negligently, willfully and intentionally, with deliberate indifference and/or in a grossly negligently manner" acting against Vinson.  Thus, they argue, there are no specifics, except to note his physical condition and symptoms; but plaintiff fails to show how that somehow creates a "conspiracy" to withhold proper medical care.

In response, plaintiff points out that the amended complaint details 37 separate instances in which Vinson, sought, requested, demanded, pleaded for

proper medical treatment from among others, defendants Miles, Rhodes, Sudhir, Jenkins, Lybarger, Taymour and Neff. (Dkt. 63, ¶¶ 28-36, 38-44, 47-49, 51, 56-59, 66, 75, 77-79, 83-86, 90, 100, 106-107, 110-111, 116, 118, 120, 128-130, 141-144). Plaintiff also asserts that the amended complaint provides specific dates, times, and the debilitating condition of the deceased; weight loss, repeated incidents of vomiting, repeated complaints of back pain, repeated complaints of pain in the left lower abdomen, several documented instances of inability to walk, repeated complaints of nausea and loss of appetite. *Id.* Additionally, the complaint documented the specific response or lack of response to the complaints of Vinson for over six months until he died from the complained of condition. *Id.* The complaint alleges that Vinson died from a ruptured blood vessel in the lower abdomen; the area he had repeatedly complained about to the Corizon defendants and others. (Dkt. 63, ¶ 149).

According to plaintiff, the complaint details specifically the common scheme and plan whereby the Corizon defendants in concert with employees of MDOC "conspired to systematically ignore all requests and pleas for medical treatment by plaintiff for his serious medical condition and instead agreed to a plan where defendant nurses would routinely write down plaintiff's complaints of pain, vomiting, weight loss and nausea; perform a perfunctory physical examination and return him to the cell without real and/or adequate medical

22

treatment for his serious medical condition." (Dkt. 63, ¶¶ 193-201). The complaint further detailed with specificity the alleged conspiracy; to withhold proper and adequate medical treatment and to instead humor plaintiff by simply taking a written report each of the more than 37 times he complained of pain or other symptoms…." (Dkt. 63, ¶¶ 26-151, 193-201). Plaintiff also points out that the Corizon defendants and others consistently and deliberately ignored the specific medical instructions from the Duane Walter Hospital to return plaintiff to its facility and care if his symptoms persisted or got worse. According to the amended complaint, plaintiff's symptoms persisted and worsened for the next five months, were documented by defendants, who nevertheless deliberately refused to take him to a hospital as instructed.

As the undersigned concluded previously in the Second Amended Report and Recommendation,[7] while plaintiff put defendants on notice of the relevant time period, the names of the alleged conspirators, and the object and purpose of the alleged conspiracy, the "overt act" requirement as to some defendants was not adequate. In the view of the undersigned, plaintiff's conspiracy claim is sufficient

---

[7] Judge Cox agreed with the undersigned that the previous complaint failed to allege a § 1983 conspiracy against defendants Faling, Royer-Thompson, Hinsley, Murphy, Wellman and Edwards. (Dkt. 50, Pg ID 698-699). Judge Cox disagreed, however, with the undersigned as to whether the § 1983 conspiracy claims had been properly challenged as to defendants Campbell, Hunter, Kinder, Hense, Speer, and Hamblin and therefore determined that the conclusions in the Second Amended Report and Recommendation were moot as to this portion of the conspiracy claims. (Dkt. 50, Pg ID 699-700).

as to those defendants where specific overt acts are alleged.  In addressing the previous motion to dismiss, the undersigned concluded that insufficient overt acts were alleged as to some defendants, but not others.  In the Second Amended Report and Recommendation, the undersigned concluded that, "[i]n the context of the conspiracy claim made against all defendants, specific participation in either denying Vinson medical care or providing constitutionally inadequate care states a claim because the overt acts necessary to state a conspiracy claim have been alleged."  (Dkt. 47).  In the amended complaint, such overt acts by each of the individual Corizon defendants (excluding Dr. Sudhir) have now been alleged.[8] Thus, the undersigned concludes that plaintiff has sufficiently stated a claim for a § 1983 conspiracy against defendants Miles, Rhodes, Jenkins, Lybarger, Taymour and Neff.

As to defendant Paratchek, who filed a separate motion to dismiss,[9] the Court must determine whether the following allegations constitute an "overt act" in furtherance of the conspiracy:

---

[8] (*See* Dkt. 63) (Jenkins: ¶¶ 29, 30, 31, 33, 48, 49, 51, 58, 59, 60, 61, 68); (Lybarger: ¶¶ 28, 34, 35, 36, 106, 107); (Miles: ¶¶ 23, 38, 39, 40, 43, 44, 51, 56, 57, 79, 83, 84, 85, 86, 88, 100, 110, 111, 112, 118, 142); (Neff: ¶¶ 128, 196, 197); (Rhodes: ¶¶ 23, 44, 75, 77, 78, 90); (Taymour: ¶¶ 28, 47, 66, 196, 197).

[9] While Paratchek does not work for MDOC and is apparently employed by another contractor of the MDOC, she is included in the conspiracy allegations found in Count IV of the amended complaint, against the MDOC defendants.

> 139.   That on May 20, 2012, Michael Vinson again submitted a written request for medical assistance to Sharon Paratchek, noting pain in the scrotum, back, stomach and the inability to walk.

> 140.   That Sharon Paratchek's response was the standard and callous "You have an appointment scheduled this week with MSP, you can discuss these issues at that time", offered no medical treatment and ignored the instructions from the emergency visit to Duane Walter Hospital which was to return the patient if the "symptoms persisted or got worse."

Again, in the view of the undersigned, these allegations fall within the scope of the conclusions reached above as to the sufficiency of plaintiff's § 1983 conspiracy claims.  Thus, the conspiracy claim against defendant Paratchek should not be dismissed at this time.

2.   Intracorporate conspiracy doctrine[10]

The MDOC and the Corizon defendants, along with Paratchek, also argue that this conspiracy claim cannot be brought due to the "intracorporate conspiracy" theory.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-510 (6th Cir. 1991).  *Hull* explains that the Sixth Circuit has "adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees," citing *Doherty v. American*

---

[10]   The only basis in the MDOC defendants' motion to dismiss as to plaintiff's conspiracy claim is the intracorporate conspiracy doctrine.  (Dkt. 69).  Thus, the undersigned has not addressed the arguments regarding the conspiracy claims raised by the other defendants as they might be applied to the MDOC defendants.

*Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984).  The "intracorporate conspiracy"

doctrine has been adopted in both antitrust litigation and civil rights cases.  *Hull*,

*supra*; *Doherty*, *supra*.  In *Hull*, the plaintiff was "alleging a conspiracy between a

school district superintendent, the executive director of the district, and a school

administrator, all of whom are employees or agents of the Board.  According to

defendants, since all of the defendants are members of the same collective entity,

there are not two separate 'people' to form a conspiracy."  Therefore, the

conspiracy civil rights claim in *Hull* was dismissed and no such claim can exist

here, as the medical providers are either employees of Corizon or of the MDOC.

The Corizon defendants do not flesh out this issue to any great extent, but the

MDOC defendants, who lost their previous motion to dismiss, insist that because

all of the defendants, including its "agents" employed by Corizon, are "members

of the same collective entity, i.e., MDOC healthcare, there are not two separate

'people' to form a conspiracy."  (Dkt. 69, Pg ID 1234).

In response, plaintiff asserts that, in this case, the MDOC defendants are

employed by the State of Michigan and conspired with employees of Corizon, a

separate legal entity.  As a result, they are not protected from immunity by the

intracorporate conspiracy doctrine.  According to plaintiff, defendants' reliance on

the term "agent" is also misplaced and inapplicable with respect to the doctrine.

An "Agent" is described as a "person authorized by another (principal) to act for

26

or in place of him; One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons" Black's Law Dictionary, 6th ed., p. 63.  In essence, the agent has the power to bind the principal contractually; acting in the stead of the principal to execute on behalf of said principal.  In the instant matter, according to plaintiff, it is MDOC who can be characterized as an agent for the State of Michigan.  MDOC, on behalf of the State of Michigan, contracted with Corizon to provide medical services for its inmate population.  Corizon is a vendor contracted to provide said services.  Plaintiff points out that Corizon and its employees have no agency power, they cannot contract on behalf of the State, may not make legally binding decisions on behalf of the State, and the State cannot be held liable for the actions of Corizon and its employees.

In essence, plaintiff asserts that Corizon's relationship with the State of Michigan is the antithesis of an agency relationship.  *See Doherty v American Motors, Corp.*, 728 F.2d 334 (6th Cir. 1984).  In *Doherty*, the plaintiff argued that his conspiracy claim should be upheld because the defendants and his attorney conspired against him during a criminal action.  The Sixth Circuit ruled that the claim required evidence of a conspiracy between AMC, its officers, agents, and attorneys on one hand, and the plaintiff's attorney.  *Doherty*, 728 F.2d at 340. It

27

found none.  The plaintiff was an employee of AMC and AMC paid for his

attorney during the criminal matter.  Thus, even though AMC paid for the

plaintiff's legal representation, that attorney was not an agent of AMC.  Similarly,

plaintiff maintains that Corizon and its employees were contracted to provide

medical services to the inmate population; they are vendors, nothing more.

Corizon and its employees have no power to legally bind the State of Michigan or

MDOC.  Thus, according to plaintiff, the intracorporate conspiracy doctrine is

inapplicable because the alleged conspiracy involves employees of MDOC and

Corizon.

In the view of the undersigned, the intracorporate conspiracy doctrine does

not bar a conspiracy claim where employees of MDOC *and* Corizon[11] are alleged

to have participated.  Defendants cite no authority for this proposition and the

court was unable to find any such clear support.  Rather, defendants rely on the

fact that Corizon and its employees are "acting under color of state law" under

§ 1983 and, therefore, they are agents of MDOC for purposes of the intracorporate

conspiracy doctrine.  This is far too big of a leap and this conclusion is not

supported by any authority.  Indeed, the intracorporate conspiracy doctrine

"provides that members of the *same legal entity* cannot conspire with one another

as long as their alleged acts were within the scope of their employment."  *Burgess*

---

[11]  Notably, defendant Paratchek is apparently employed by yet a third unidentified entity.

*v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013) (emphasis added).  Defendants do not explain how MDOC and Corizon are the "same legal entity."  Indeed, it is clear that they are not.  Nor does there appear to be any agency relationship such that this doctrine could be invoked.

Notably, there is a split of authority in the district courts within the Sixth Circuit as to whether the intracorporate conspiracy doctrine even applies to § 1983 claims.  As explained in *Engle v. City of Cuyahoga Falls*, 2015 WL 3852143, *9 (N.D. Ohio 2015), it is unclear and unsettled within the Sixth Circuit as to whether the intracorporate conspiracy doctrine applies to conspiracy claims brought under § 1983. The Court further observed that it is evident from a survey of recent cases that courts within the Sixth Circuit continue to spar over whether two individuals from the same entity can form a conspiracy under § 1983.  *Id*., comparing *Gillespie v. City of Battle Creek*, — F.Supp.3d —; 2015 WL 1459611, at *7 (W.D. Mich. 2015) (applying intracorporate doctrine to bar conspiracy claim under § 1983); with *Tinney v. Richland Cnty*., 2015 WL 542415, at *12 (N.D. Ohio 2015") (refusing to extend intracorporate doctrine to § 1983 conspiracy claim brought against individual employees of the same municipality).  Very recently, the Sixth Circuit observed that this question is unsettled.  *Diluzio v. Village of Yorkville, Ohio*, 2015 WL 4646121, *8 (6th Cir. 2015) ("[E]ven if the intracorporate conspiracy doctrine applies to municipal government officials in a

29

§ 1983 action (and we do not hold that it necessarily does), the doctrine does not apply in this case because the defendants are accused of conspiring to wrongfully divest [the plaintiff] of his property, which would fall outside the scope of their employment."). Given the unsettled nature of this doctrine as applied to § 1983 conspiracy claims, the undersigned is not inclined to find that such claims are barred for this additional reason.

   C.    § 1983 Claim Against Corizon Corporation (Count VIII)

        1.    Corizon's arguments

Corizon Corporation also claims that it is not liable under the theory of respondeat superior. *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (1983); *Street v. Corrections Corporation of America*, 102 F.3d 810, 817-818 (6th Cir. 1996). Therefore, even if any defendant did act inappropriately, Corizon contends that there is no liability as to it because plaintiff has not shown that Corizon has been deliberately indifferent in any fashion, much less that there has been a policy, practice, or procedure violated. To state a claim of deliberate indifference against Corizon, plaintiff must plead a policy, practice, or custom by Corizon that is allegedly unconstitutional, and that explanation must be specific, i.e., "to satisfy the *Monell* [*v. City of New York Department of Social Services*, 436 U.S. 658 (1978)] requirements, a Plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the

execution of that policy.'"  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th

Cir. 1993), quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987),

cert. denied, U.S. (1994).

According to Corizon, plaintiff has not pled a specific violation "pursuant to

policy, custom and usage" against Corizon and plaintiff's amended complaint cites

no specific Corizon policy or procedure which allegedly violated Vinson's civil

rights.  Plaintiff alleges in ¶ 304 that the decedent's death was "due to Defendant

CORIZON's custom and policy and/or lack of custom and policy amounting to

inaction."  Plaintiff further alleges in ¶ 305 that Corizon created a kite system to

submit a written request for treatment.  Paragraph 306 states that Corizon "created

a system of appeals and scheduled visits that was a pretext for denial and delay of

providing adequate medical care."  According to Corizon, the remaining

paragraphs make similar generic claims about denial of medical care and

examinations, and the kite system.  Corizon maintains that these vague claims

regarding medical needs and health care decisions are issues regarding the

standard of care, not deliberate indifference.  Essentially, according to Corizon,

plaintiff is making vague claims as to alleged practices without specific evidence

that such practices exist or demonstrating a pattern of such conduct.  *Mullins v.*

*Stratton*, 878 F. Supp. 1016, 1019-1020 (E.D. Ken. 1995) explains that the

plaintiff must show "a close causal connection between the policy and the injuries

suffered" and plead facts that support such a policy or custom exists.  Corizon

maintains that there is nothing in plaintiff's amended complaint that sets forth the

substance of a claim concerning a specific Corizon's policy.  Liability cannot be

derived from a single act or individual, and "[p]roof of the existence of the policy

prior to the incident that is the subject of the complaint is necessary." *Hullett v.

Smiedendorf*, 52 F.Supp.2d 817, 828 (W.D. Mich. 1999).  According to Corizon,

plaintiff has not presented evidence to show the required pattern of conduct.

Rather, Corizon maintains that plaintiff merely raises vague allegations without

reference to any specific, identifiable Corizon policy or procedure.  Plaintiff

presumes vague alleged policies without demonstrating a close causal connection

to the decedent's injuries.  He raises denials as to himself only, and fails to present

evidence of systemic denials to inmates with a clear link to a Corizon policy.

Therefore, even if plaintiff were to reply to this response by citing a specific

Corizon Health policy, Corizon says that in and of itself would be insufficient—as

proof of a pattern of conduct including evidence of systemic denials to inmates

linked to that policy would be required to hold Corizon liable to plaintiff.

According to Corizon, plaintiff cannot demonstrate such a pattern of conduct.

      2.    Plaintiff's arguments

Plaintiff contends that Corizon created a system of appeals as a pretext to

deny medical care, required a sick inmate to first see a nurse before being allowed

treatment by a physician and vested the nurses with the authority to deny a visit with a physician, created a policy (kite system) that scheduled physician visits at predetermined times irrespective of the seriousness of the medical condition and was a pretext to deny medical care and a way to contain costs, that the system of kites and appeals, and the power of nurses to deny visits with a physician was designed to maximize the profits from the vendor contract with MDOC to provide medical care to inmates. (Dkt. 63, ¶¶ 202-211). At the hearing, plaintiff maintained that the heart of the pattern, practice and policy claim against Corizon was the continual delay in providing constitutionally adequate medical care.

       3.    Discussion

    As the Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), there is no vicarious or respondeat superior liability under § 1983. *See Iqbal*, 556 U.S. at 676. Thus, for example, in the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm. v. Brown*, 520 U.S. 397, 415 (1997). In the context of a claim against a municipality, a plaintiff therefore must establish both (1) an underlying violation of his constitutional rights, and (2) that the violation resulted from the municipality's own deliberately indifferent policies. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis

requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").

This rule of municipal liability applies equally to private corporations that are deemed state actors for purposes of § 1983. *See Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996). Thus, Corizon "although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held vicariously liable for the actions of its agents.... Hence, [Corizon's] liability must ... be premised on some policy that caused a deprivation of [plaintiff]'s Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001). To establish that the alleged constitutional violations resulted from Corizon's illegal policy or custom, there are "four avenues [plaintiffs] may take." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Specifically, plaintiffs "can look to (1) [Corizon's] ... official ... policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or

34

acquiescence of federal rights violations." *Id*. However, plaintiffs "bear [ ] a heavy burden in proving [Corizon's] liability, and [they] cannot rely on a single instance to infer a policy of deliberate indifference." *Id*. at 433.

Neither party does a very good job of comparing the alleged policy, pattern, and customs alleged in this case to those in other cases, which have either passed muster or not under Rule 12(b)(6). However, the court has found several cases where similar customs were alleged and found to survive a motion to dismiss, post-*Iqbal/Twombly*. In *Owens v. CMS, Inc.*, 2009 WL 2242686, *1 (W.D. Mich. 2009), the plaintiff alleged that over the course of two years, he was repeatedly seen by the individual defendants for medical care for his knee, which he said required surgery after a work injury in a correctional facility. Finally, the plaintiff had surgery, but contended that the unjustified two year delay in the knee surgery cause his condition to worsen unnecessarily, caused unnecessary pain, and allowed permanent damage and advanced degeneration to occur. *Id*. The plaintiff claimed that CMS had a custom or policy of not referring prisoners for needed surgery in a timely matter. CMS filed a motion to dismiss, which was ultimately denied by the court. Both the magistrate judge and the district judge reasoned that the plaintiff sufficiently identified the "policy, practice or custom" of CMS which caused or exacerbated his injuries. *Id*. at *3. The court rejected CMS's claim that the complaint failed to meet the standards of *Iqbal* and *Twombly*, concluding that

the complaint gave CMS "fair notice" of the claim and the grounds on which it rested. Indeed, the court concluded that the plaintiff stated a claim that by adhering to its customary practice, CMS violated the Eighth Amendment and caused injuries that were not inevitable, but which could have been avoided or ameliorated through more promptly rendered care. *Id*. at *3.

The court also rejected CMS's argument that the plaintiff had failed to allege a sufficient pattern or practice. The court pointed out that the complaint alleges that the prolonged delay in providing the knee surgery was caused by the "long standing" practice of denying opportunities to refer the plaintiff for additional examination, testing, and surgery despite the plaintiff's repeated complaints that his knee was painful and required surgery. *Id*. at *4. The court also pointed out that whether the plaintiff could present sufficient competent, relevant evidence for a reasonable factfinder to conclude that CMS actually committed an Eighth Amendment violation was a matter to be decided at summary judgment or trial. *Id*. at *4.

Notably, the *Owens* court also rejected CMS's objection that "Plaintiff's Complaint cites no specific CMS policies or procedures which allegedly violated Plaintiff's civil rights." *Id*. at *3, n. 7. The court observed that CMS seemed to be "asking for an allegation that CMS had an official policy—either written, formally adopted, or publicly stated—of delaying needed medical care for inmates." The

36

court concluded that such an allegation might be necessary to state a claim that

CMS had a "policy" that caused or led to the Eighth Amendment violation, but it

was *not* necessary in order to state a claim that CMS had a "custom" that caused or

led to the violation. *Id*. As explained by another court,

> The *Monell* court described a ... policy as including "a
> policy statement, ordinance, regulation, or decision
> officially adopted and promulgated ...." An actionable
> "custom" in contrast, "has not received formal approval
> through ... official decisionmaking channels." A § 1983
> plaintiff may establish the existence of a custom by
> showing that policymaking officials knew about and
> acquiesced in the practice at issue. *Ebron v. Monroe
> Cty. Jail*, 2008 WL 268826, *5 (E.D. Mich. Jan. 29,
> 2008) (O'Meara, J.) (quoting *Monell*, 436 U.S. at 690
> and 690-91), citing *Memphis, Tenn. Area Local, Am.
> Postal Workers Union v. City of Memphis*, 361 F.3d 898,
> 902 (6th Cir. 2004).

*Id*. at *3, n. 7.

Similar "customs" of delays in treatment have been found to withstand Rule

12(b)(6) motions in other cases well. For example, in *Thomas v. Foster*, 2013 WL

1347934, *3 (M.D. Tenn. 2013), the plaintiff alleged that he filed numerous sick-

call requests and grievances over a period of more than a month since he received

a diagnoses of a dislocated shoulder, but did not receive any medical attention

other than NSAIDs and a sling shortly after the accident that caused his injury.

The court concluded that the allegation of delay was sufficient by itself to give rise

to a reasonable inference that Correct Care Solutions (an entity contracted to

perform medical services at the correctional facility) had adopted a policy or procedure of delaying medical care to the point of deliberate indifference to the serious medical needs of inmates.  Thus, the court concluded that the claim survived a Rule 12(b)(6) challenge.  *Id.*; *see also Neal v. Foster*, 2012 WL 4364093, *4 (M.D. Tenn. 2012) ("In the present complaint, the plaintiff's allegations, construed very broadly, reasonably give rise to an inference that CCS itself has a custom or policy of delaying necessary medical care to inmates, and that the entity itself authorized, approved, or knowingly acquiesced in the decision to deny him access to care within a reasonable period of time after he demonstrated a serious need for medical care."); *Modd v. County of Ottawa*, 2010 WL 5860425, *7 (W.D. Mich. 2010) (The plaintiff's allegations, accepted as true, were deemed sufficient to meet plaintiff's burden of alleging a plausible claim of a custom or policy where plaintiff alleged that the county had a policy or practice of withholding or denying prescription medication as evidenced by the fact that the plaintiff was denied all prescription medications for a seven day period.).

Comparing the present circumstances to those identified in the above referenced cases, the undersigned concludes that plaintiff here has sufficiently alleged a claim against Corizon of a "custom of tolerance or acquiescence of federal rights violations."  While there is some debate about whether the "kite system" is really a policy of MDOC and not a policy of Corizon, the "kite system"

38

itself is but one aspect of plaintiff's custom claim against Corizon.  The

undersigned does not see how the kite system itself, as a policy, is causally

connected to the injuries alleged by plaintiff, which is required to support a *Monell*

claim.  Here, however, plaintiff alleges that the kite system was used by Corizon to

continually and repeatedly deny and delay constitutionally adequate care to

Vinson over the course of several months.  Even if the kite system itself is in fact

an official MDOC policy, rather than a policy of Corizon, this does not somehow

preclude a claim that Corizon, as the medical provider, had a custom of

unconstitutionally delaying and denying care and that such custom was applied to

Vinson in this case as evidenced by the failure to diagnose and treat the condition

that ultimately led to Vinson's death.  Thus, in the view of the undersigned, the

*Monell* claim (Count VIII) against Corizon should not be dismissed at this time.

D.    Gross Negligence (Count IX)[12]

1.    Defendants' Arguments

Plaintiff's Count IX raises a claim for gross negligence under state law.

Plaintiff alleges that the MDOC defendants exhibited conduct so reckless as to

demonstrate a substantial lack of concern for plaintiff.  In Michigan, government

---

[12]  Plaintiff has agreed that this claim should be dismissed against Corizon and its employees because they are not employees of the State.  (Dkt. 84, Pg ID 1413).  In addition, at the hearing, it was revealed that defendant Paratchek was neither an employee of the state nor an employee of Corizon. Thus, plaintiff's counsel further agreed that the gross negligence claim against her should also be dismissed.

employees can be held liable for gross negligence under Michigan tort law. Mich.

Comp. Laws § 691.1407(2)(c). Gross negligence is defined by statute as "conduct

so reckless as to demonstrate a substantial lack of concern for whether an injury

results." Mich. Comp. Laws § 691.1407(7)(a). Michigan law offers government

employees immunity from tort liability under certain circumstances. Mich. Comp.

Laws § 691.1407(2). Defendants are immune from liability if they acted or

reasonably believed they acted within the scope of their employment, engaged in

the discharge of a government function, and their conduct did not amount to gross

negligence that was the proximate cause of the injury or damages. *Id.*

Furthermore, according to defendants, Michigan courts have repeatedly "rejected

attempts to transform claims involving elements of intentional torts into claims of

gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483-84; 687

N.W.2d 132 (2004). In *VanVorous*, the plaintiff filed claims of assault and battery

and gross negligence against defendant police officers who shot and killed her

husband. The Michigan Court of Appeals expressly held that because "plaintiff's

claim of gross negligence is fully premised on her claim of excessive force …

plaintiff did not state a claim on which relief could be granted." *VanVorous*, 262

Mich. App. at 483-484.

    With respect to plaintiff's claims of negligence in Count IX, the state

defendants assert that, as state employees, they are afforded immunity under Mich.

40

Comp. Laws § 691.1407(2).  *See Odom v. Wayne County*, 482 Mich. 459; 760

N.W.2d 217 (2008) (the court summarizes the availability of immunity for

lower-level employees).  As the court explained in *Odom*, in cases of negligence,

to qualify for immunity under Mich. Comp. Laws § 691.1407(2) the governmental

employee must show:

> a. The individual was acting or reasonably believed that
> he was acting within the scope of his authority;
>
> b. The governmental agency was engaged in the exercise
> or discharge of a governmental function; and
>
> c. The individual's conduct did not amount to gross
> negligence that was the proximate cause of the injury or
> damage.

*Odom*, 482 Mich. at 479-80.  Defendants maintain that plaintiff fails to allege that

the state defendants were not acting within the scope of their authority.  Nor does

plaintiff allege that the operation of prison facilities is not a governmental

function.  Further, defendants argue that plaintiff's allegation of negligence does

not constitute evidence of gross negligence.  *See Maiden v. Rozwood*, 461 Mich.

109, 122; 597 N.W.2d 817 (1999) ("[E]vidence of ordinary negligence does not

create a material question of fact concerning gross negligence.").  Thus, the state

defendants assert that they are entitled to government-employee immunity under

Mich. Comp. Laws § 691.1407(2) with respect to plaintiff's allegations of simple

negligence.

41

The state defendants also contend that they are entitled to dismissal of the gross negligence claim under the holding of *VanVorous*.  According to defendants, plaintiff cannot bring a gross negligence claim that is premised on defendants' alleged intentional torts.  They assert that deliberate indifference is "akin to criminal recklessness," *see Jones v. Muskegon County*, 625 F.3d 935, 947 (6th Cir. 2010), a claim that clearly involves elements of intentional torts.  Here, plaintiff's allegations of gross negligence are premised on the intentional torts of deliberate indifference and conspiracy.  Thus, defendants assert that plaintiff is clearly attempting to "transform claims involving elements of intentional torts into claims of gross negligence," which *VanVorous* prohibits.

Finally, defendants argue that plaintiff has failed to adequately plead a claim of gross negligence against them.  A complaint must contain either direct or inferential allegations respecting all the material elements necessary for recovery under a viable legal theory.  *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).  The Michigan Supreme Court has defined "the proximate cause" within the meaning of Mich. Comp. Laws § 691.1407(2)(c) as meaning "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 462 Mich. 439, 459; 613 N.W.2d 307 (2000).  Here, according to defendants, the amended complaint fails to contain either direct or inferential allegations as to how each individual state defendant's conduct amounted to the

42

proximate cause of plaintiff's injuries. Accordingly, under *Twombly* and *Iqbal*, plaintiff has failed to properly plead a claim for gross negligence.

2.     Plaintiff's arguments

Plaintiff agrees that, generally, government officers and employees acting within the scope of their authority are immune from tort liability, provided that their actions are not grossly negligent. Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2)(c). Plaintiff maintains that the amended complaint alleges reckless and intentional conduct that constitutes gross negligence rather than an intentional tort. Plaintiff's complaint alleges that defendants were placed on notice about Vinson's condition and his attempts to secure proper treatment and the lack of response (Campbell, Hunter and Kinder). The MDOC nurses had significant contact with Vinson and access to his medical records. According to plaintiff, these defendants deliberately refused to provide proper medical treatment, chose to deliberately ignore the significant symptoms that they were recording as medical records over 37 separate visits to the medical facility - continual vomiting, significant weight loss, continual complaints of abdominal pain and nausea – over a five month period. And most significant is the fact that these defendants chose to deliberately ignore the instructions from Duane Walter Hospital after a December 2011 emergency room visit by Vinson, to

43

take him back to the hospital if symptoms persisted or got worse. These

defendants did not follow those instructions despite the documented medical

history of persistent and worsening symptoms. Vinson died as a result of a

ruptured blood vessel in his left abdomen. Thus, plaintiff maintains that

defendants' actions constitute gross negligence; conduct so reckless as to

demonstrate a substantial lack of concern for whether an injury results." Mich.

Comp. Laws § 691.1407(2) (c).

3.    Discussion

It appears that plaintiff concedes that any ordinary state law negligence

claim is barred by governmental immunity. As to gross negligence in this context,

defendants' arguments were recently rejected by the Western District of Michigan

in *Murphy v. Bonn*, 2014 WL 4187806 (W.D. Mich. 2014) (M.J. Scoville),

adopted in relevant part by 2014 WL 4187718, *1 (W.D. Mich. 2014) (J.

Maloney). In *Murphy v. Bonn*, the defendant relied on the principle that a gross

negligence claim will not lie for intentional misconduct, citing *VanVorous, supra*.

Indeed, the defendant there argued that because "plaintiff's deliberate-indifference

claim is the equivalent of an intentional tort ... [h]e cannot sue for gross

negligence." *Id*. The Court, however, concluded that the law was to the contrary

as set forth in the published decision *Bell v. Porter*, 739 F.Supp.2d 1005 (W.D.

Mich. 2010), authored by Judge Robert Holmes Bell. In *Bell v. Porter*, Judge Bell

44

rejected the expansive interpretation of the *VanVorous* decision advanced in

*Murphy v. Bonn*.  Judge Bell held that the plaintiff's gross negligence claim was

not barred by *VanVorous* and denied the defendant's motion for summary

judgment.  *Id*. at 1014-16.  Judge Bell, Magistrate Judge Scoville, and Judge

Maloney, all concluded that conduct that is deliberately indifferent is not

necessarily intentional.  *See Bonn v. Murphy* and *Bell v. Porter*.  As Magistrate

Judge Scoville further observed, the Sixth Circuit has held that gross negligence

under Michigan law is equivalent to deliberate indifference under Eighth

Amendment analysis.  *See Quigley v. Thai*, 707 F.3d 675, 686 (6th Cir. 2013).

In addition, the Sixth Circuit recently affirmed the denial of summary

judgment on the defense of governmental immunity to a gross negligence claim,

which was also asserted along with a deliberate indifference/denial of medical care

claim in *Kindl v. City of Berkley*, --- F.3d ----; 2015 WL 4899417, *10 (6th Cir.

2015).  In the view of the undersigned, the governmental immunity statute does

not bar a claim of gross negligence based on defendants' theory and plaintiff has

otherwise stated a claim.  Thus, this claim (Count IX) should not be dismissed,

except as otherwise stated in this report and recommendation.

E.     Intentional Infliction of Emotional Distress (Count X)

The intentional infliction of emotional distress is a tort under state law. The

Michigan Court of Appeals explained in *Holmes v. Allstate Ins. Co.*, 119 Mich.

45

App. 710, 714-715 (1982) that the "Court has explicitly adopted the definition found in the Restatement Torts, 2d, § 46, pp 71-72. . . ." That Reinstatement section provides: "'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *'" *Id.* (citations omitted). The Court in *Holmes* expounded on the Restatement: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 15. *Graham v. Ford*, 237 Mich. App. 670, 674-675 (1999) gives the following elements "to invoke the tort of intentional infliction of emotional distress":

> 1. extreme and outrageous conduct;
>
> 2. intent or recklessness;
>
> 3. causation; and
>
> 4. severe emotional distress.

The Court in *Graham* further explains: "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." (citation omitted). Therefore, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Further, it "is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id*.  Ultimately, the test is whether an average person would exclaim "Outrageous!" on hearing the facts of the case.  *Id*.

According to defendants, plaintiff's claims in Count X of the proposed amended complaint refer to the alleged lack of medical care to the decedent, but do not show "outrageous" conduct.  The conduct is alleged to be "outrageous, intentional, criminal, grossly negligent and cruel," but as *Graham* explains, tortious, criminal, or even malicious actions are not sufficient to state a claim for intentional infliction of emotional distress.  According to defendants, plaintiff's facts, while unfortunate, simply relate a series of medical encounters.  Defendants maintain that there is no statement that would suggest their actions were beyond the bounds of decency, intolerable, or extreme as required for the tort.  There is nothing to invoke an "outrageous!" response, and plaintiff fails to establish the

47

claim.  The MDOC defendants also argue that if each medical contact is broken down as to each defendant, there must be specific "outrageous" conduct alleged as to any one defendant for every medical contact.  That is, according to defendants, the court cannot consider the collective or concerted action in order to determine whether the claim passes muster.

According to plaintiff, the amended complaint details sufficient facts that if believed, a jury might find the conduct sufficiently outrageous to constitute the intentional infliction of emotional distress.  Plaintiff alleges requesting medical treatment on more than 37 separate occasions over a six month period; the objective symptoms were documented weight loss, vomiting, nausea, severe abdominal pain.  Yet, plaintiff says defendants displayed a callous and deliberately outrageous disregard for Vinson; they deliberately refused to take him to an emergency room despite instructions from that hospital to do so if the symptoms persisted or worsened; defendants refused to offer any or adequate medical treatment at the correctional facility; they refused to offer assistance in documented instances including one where defendants stood around while Vinson laid on the floor in pain and after a discussion, defendants walked way without offering help or treatment; defendants referred Vinson to a psychiatrist who found nothing wrong mentally but concluded that there was ongoing psychological trauma due to physical illness yet nothing was done. Vinson suffered immense

unrelenting physical pain and brutal psychological trauma for six months.  Near

death, these defendants transported Vinson to another facility but did so in a

regular prison transport vehicle instead of a medical equipped vehicle.  Vinson

died the next day from the very same issues he had complained about and sought

treatment for over six months; a ruptured blood vessel in his abdomen.  Most

importantly, his medical records contained specific instructions from a December

2011 emergency room visit that he should be taken back to the Duane Walter

Hospital Emergency Room if his symptoms persisted or got worse.  According to

plaintiff, these defendants deliberately ignored those specific instructions for five

months while documenting that his symptoms persisted and got worse.  These

defendants transferred Vinson to the Central Michigan Correctional Facility on

May 24, 2012 where a nurse after a medical examination promptly

recommended/arranged for him to be taken to a hospital.  He died the next day

before that occurred.  According to plaintiff, these facts could certainly cause an

average member of the community to have resentment against these defendants

and to exclaim "outrageous!"

 "The trial court must determine as a matter of law whether the defendant's

conduct was so extreme and outrageous to withstand a motion for summary

disposition."  *Duran v. The Detroit News, Inc.*, 200 Mich.App. 622, 629-30; 504

N.W.2d 715, citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602; 374

N.W.2d 905 (1985).  Liability will only be found when the defendant's conduct is so outrageous and extreme that it goes beyond all bounds of decency and is "to be regarded as atrocious and utterly intolerable in a civilized community."  *Doe v. Mills*, 212 Mich.App. 73, 91; 536 N.W.2d 824 (1995), citing *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich.App. 335, 342; 497 N.W.2d 585 (1993).  However, a trial court is to serve as the gatekeeper as to whether the conduct in question could reasonably be deemed sufficiently extreme and outrageous before even allowing it to go to the jury.  *Sawabini v. Desenberg*, 143 Mich.App. 373, 383; 372 N.W.2d 559 (1985).[13]  Plaintiff has not adequately addressed defendants' claim that each individual defendant's conduct must be sufficiently outrageous to survive this stage of the proceedings.  Absent an argument from plaintiff identifying how the allegations in the amended complaint as to each defendant constitutes outrageous conduct, it is not the Court's obligation to parse the amended complaint's allegations as to each defendant and then determine if each defendant's conduct meets this standard.  And, plaintiff offers no authority for the proposition that this intentional tort can be maintained by concert of action or on a

---

[13] In reply, the MDOC defendants assert that plaintiff's emotional distress claim is disguised as a medical malpractice claim, for which he has not complied with state procedural requirements.  While plaintiff may indeed have a claim for medical malpractice, the undersigned fails to see how that precludes him from asserting an emotional distress claim should the claimed conduct otherwise satisfy the elements of such a claim.  The defendants have not cited any authority to the contrary.  This issue is moot, however, given the undersigned's conclusions that plaintiff's claim fails for other reasons.

50

collective basis.  For these reasons, the undersigned finds this claim (Count X) to be legally insufficient and it should be dismissed.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions be **DENIED** in part and **GRANTED** in part.  Plaintiff's intentional infliction of emotional distress claim (Count X) should be **DISMISSED** without prejudice as to all defendants.  The undersigned also **RECOMMENDS** that plaintiff's official capacity claims against the MDOC defendants be **DISMISSED**.  The undersigned also **RECOMMENDS** that all claims against defendant Sudhir be **DISMISSED**.  In addition, plaintiff has agreed to dismiss the gross negligence claim against all Corizon employees and defendant Paratchek (Count IX).  The undersigned **RECOMMENDS** that the motions to dismiss plaintiff's remaining claims (Counts I, II, III, IV, V, VI, VII, VIII, and IX) by the remaining defendants be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 30, 2015                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>October 30, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left: 40%;">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>